By St. Pauli:

No. 7684

7684

Planter's Cotton Oil Co.

vs

Wm. F. Klumpp

221

St Paul J:

This is a claim for damages for alleged breach of contract Defendant sought of plaintiff for future delivery, 200 bales of "mill-run cotton linters, made from clean, sound seed, and free from country damage ----- subject to inspection and acceptance by buyer's representative."

When the time for delivery arrived, defendant sent an experienced inspector to examine the linters as tendered, and this one inspected and sampled them in the usual way, and in the presence of plaintiff's representative. He pronounced them not up to grade, i.e. not clean "on account of having sweepings in the bales and being nappy and moty;" and he therefore rejected them.

I

There was evidence introduced by plaintiff, over defendants objection, that "parol evidence was inadmissible to vary or contradict the written contract," tending to show that the linters were fully up to grade, and even above; and incidentally that the

223

market price of linters had declined between the purchase and the tender.

## II

If the purpose of this evidence was <u>simply</u> to show that the linters were up to grade, and therefore <u>should not</u> or <u>could not</u> have been rejected under the contract, then the objection was (substantially) well founded; since it was wholly <u>irrelevant</u> to the only issue involved, as will hereafter be shown. For the objection must of course be read in the light of the answer; to wit, that defen dant, "having purchased subject to inspection and acceptance", and having actually inspected and <u>rejected</u> (in good faith) could not be compelled to receive the linters which in his judgment (honestly exercised) "were not of the grade stipulated", and which in that respect at least, did not meet "the requirements of the contract";

In seeking the meaning, and weighing the merits, of an objection to evidence, courts should not hang upon the bare words used, and by narrowly adhering to them miss the true and evident meaning of the pleader. As with other pleadings, it suffices if the words used "enable the court to see the meaning"(41 Cyc p 75, and notes 33&34)

If on the other hand, the purpose was to show that defendan rejected the linters <u>arbitrarily</u> because the market had declined, then we can only say that such evidence, standing alone (as it does) will not suffice to establish what, in effect, amounts to a

224

charge of <u>bad faith</u> on the part of defendant; for fraud and bad

faith are not to be presumed lightly.   We are satisfied that in

this case there was only an honest difference of opinion.

### III

The contract herein sued on is subject to one ~~to~~ of three

interpretations:

I: By attaching <u>slight importance</u> to that clause of the

contract r eading, "subject to inspection and acceptance by buyer's

representative"; that is to say, by <u>disregarding</u> i.e expunging these

words, we might reach the very obvious conclusion that the contract

called simply for "~~kill~~ "mill-run cotton linters, ~~amde~~ made from clean, sound

seed, and free from country damage"/

2: Or, by adhereing grossly to the naked words, "subject to

inspection and <u>acceptance</u> by buyer's representative," we might give

the contract the very harsh construction that defendant might

<u>arbitrarily</u> dissolve his own obligation: and that though plaintiff

had meant to bind itself in good faith, yet defendant had not meant

ot bind himself at all, and HAD NOT DONE SO.

3: Or, by retaining the words "subject to inspection and

inspection and acceptance, by buyer's representative," and giving the

and interpretation consistent with law and equity, and custom and-

common sense, we might reach what we believe to have been the true

intention of the parties.

We cannot expunge from a contract words deliberately put into it by the parties thereto, and therefore presumably intended to have some effect, when the words themselves are capable of receiving a meaning not destructive of the contract itself, and tending but to modify the obligation thereof. To expunge them would be to _make_ a contract not to _interpret_ one; and hence would be beyond the judicial power, whose functions extend not further than to _interpret and enforce_ the obligations which the parties themselves have stipulated for on one side and undertaken on the other. This is too elementary to permit bringing forward of authority.

V

We cannot give to the contract that harsh construction which would give the defendant the the right to withdrew from it arbitraily, that is, by the sole exercise of his will. For the parties evidently meant to enter into some kind of binding agreement; and to give their agreement _that_ construction would be to strangle it at its very birth.

Our own law on the subject is statutory. Every obligation is null, which has been contracted upon a condition dependent for it happening solely on the exercise of the obligor's will; ~~~~~~~~~~~~~~ C. C. 2024, 2034, 2035.

And the general law is quite to the same effect, viz,

A promise which is made conditional upon the will of the promissor is of no value; for one who promises to do a thing only if it pleases him to do it, *at all.* is of course not bound to perform it, (90yc. P. 618,& notes 2-4; Verbo, contracts)

It is therefore the manifest and imperative duty of this court to seek some interpretation, which whilst it leaves intact, and gives effect to, the very words used by the parties, yet at the same time respects their evident and expressed purpose to give some kind of binding force to the agreement itself. Thus, where an agreement is susceptible of two meanings, one of which *will* uphold and render it valid as a contract, and the other will destroy and render it invalid contract, *as a contract, that interpretation will be preferred which tends to uphold the agreement as a valid contract;* "ut res majis valeat quam pereat". (90yc. p 586, and note 54; Verbo, contracts. See also Steppach vs Norms, 7 Orleans App. 214).

## VI

And this agreement is capable of receiving an interpretation which will both give effect to the words used and at the same time save the binding force thereof intended by the parties. For "a conclusion reached in good-faith by the exercise of one's judgment on a particular matter, is not dependent solely on one's will or pleasure. Hence a contract with a condition which depends on a bona fide exercise of judgment by one of the parties about some of the particulars, is not open to the objection that it depends on an event which it is within the (lawful) power of that party to prevent." Steppach vs Norms, 7 Orleans App. 214.

227

Accordingly in contracts in which the promissor agrees to pay for goods , or labor, "provided he is satisfied," the obligation is binding. But there is absolute unanimity of judicial opinion that the promissee is "<u>practially</u> debarred from questioning the decision of the promissor, or investigating its propriety." For the courts refuse to say that he can be compelled to pay on ~~prlif~~ proof that someone ilse is satisfied; since they recognize that in matters of taste or judgment there is no absolute standard. (9 Cyc. 649, and notes 6-16 Verbo, contracts).

Hence in a somewhat similar case our Supreme Court has decided that where the judgment of an architect in the emplo. of one one of the parties, was to govern in interpreting the specifications, `i.e. in determining what material and workmanship would be satisfactory and acceptable, etc., his opinion "based on knowledge of the situation and honestly given" is conclusive (that is to say, in the absence of fraud or gross and palpable error) Carre vs Weix, 100 La. 20, 26, 27. *See also U.S. vs Gleason, 175 U.S. 588 (602), and authorities there cited.*

### VII

It is urged that in Jochams vs Ong, 45 An 1289, our Supreme Court took a different view of a somewhat similar contract. We do not think so. In the first place that case hinged entirely upon another point, to wit, whether defendant was or was not justified in refusing to accept a delivery; which in turn hinged upon the question whitner such a delivery was or was not to invest him

with the right to sell.    But the question in this case did not,

and could not arise in that.    Thus the defendant had bought certain

cement on condition that he would be "satisfied by a test" that it

was of a certain strength.    He himself, then sent samples to a person

of his own selection and competent to make the test; and that

expert (his own chosen representative) found the samples fully

up to the requirements of the contract.    So that that feature of the

recitals given by the court, was either strictly narrative or purely

"a propos de bottes," for it weighed not a feather's weight in the

decision of the case, and was not even involved.

### VIII

Of course this contract, having been entered into in the

State of Texas, must be interpreted by the laws of that commonwealth;

but in the absence of some statute or particular jurisprudence

from that jurisdiction we are bound to assume that the law there is the

the same as in our own, or at least that it does not differ from the

general jurisprudence prevailing here and elsewhere.

Two decisions of the Texas courts are called to our

attention, which are said to establish a different rule.    But to

us this does not appear.    Thus, in Taussig vs Tobacco Growers' Ass'N,

128 S. W. Rep 444, no more was decided than that where goods were

sold simply of a certain grade, the purchaser could not require

something additional to satisfy himself; the right to reject after

inspection because unsatisfactory to himself was not given in the contr

ract. So that case has no application whatever.

229

Aaron vs Smith Co, 100 S. W. Rep 547, involved a sale of sugar for future delivery. The seller was to furnish samples and if these proved unsatisfactory to the buyer, same should be submitted to arbitrators. Thereafter (it was claimed) the terms of the contract were changed, whereby the seller was simply to guarantee that the sugar should be of the quality called for by the contract. The court held that the change (if made) dispensed with the necessity of submitting samples, and (hence) if the sugar was up to grade it was breach of contract to refuse to receive it. And the issues submitted to the jury were therefore, I: Whether such a change was actually made, and 2: Whether the sugar tendered was up to grade. But the court did say, "If this change in the contract was made-----we think that necessarily it would require the sugar to be received without such samples. If samples----were to be sent to the purchaser and examined by him, and in case of disapproval by him (re-examined) by the arbitrators, there would have been no necessity for the guaranty." See p. 348, Col 2, in fine. From which we conclude that the Court of Civil Appeals conceived the law of Texas to be no different from the general doctrine above stated (Section **VI**)

IX

Hitherto we have not made mention of Article 2460 C. C. reading as follows: "Things of which the buyer reserves to himself the view and trial, although the price be agreed upon, are not sold, until the buyer be satisfied with the trial, which is a kind of suspensive condition of the sale."

230

Indeed we were loath to interpret a Texas contract by any statute (perhaps a purely arbitrary one) of another state, on the theory (and the only justifiable one) that the statute had entered into the contract from its inception; for we are dealing not with a remedy but with a <u>substantial right</u> acquired by contract.   Hence we preferred to proceed upon principles universally accepted.

But lest it be thought that we adopt the contention (or suggestion) of defendant, that until acceptance, i.e. approval, of the thing sold ( not *of* the contract) by the buyer "no obligation exists and the contract is without effect," we take occasion to say that our statute is not to be so interpreted.   For whilst it declares that the thing is not sold until the buyer be satisfied, it very distinctly indicates that this satisfaction vel non must result from a trial  "which (satisfaction vel non after trial) is a kind of suspensive condition of the sale."

Now the authors of our ~~side~~ *code* knew full well the difference between the potestative condition, which depends on the sole will of a party and emasculates the agreement ( C. C. 2024, ~~2034~~ 2034, 2035, ) and the suspensive condition, which merely holds it in abeyance (C.C. 2043) : and therefore when they made use of the latter term in declaring the thing not sold, they meant simply that the effect of such a sale should be regulated, not by articles 2456 and 2467 C.C., but by article 2044/.. ; to wit, that the thing thus sold does not become at once the property of the buyer so as to remain in the meanwhile at the buyers risk;  but that on the contrary the sale is not yet complete

231

and perfect, and thus the thing continues still the property of the

seller and remains at his (the seller's) risk subject however to

his obligation to deliver it if the buyer be satisfied with the trial.

See also  C.C. 2452, 2459.. Of course if the seller refuses to allow

the trial, or the buyer refuses to make it, there is then a breach

of contract, which at once gives rise to a claim for damages. (Righto

vs Aleman, 4 Rob 45; Steppech vs Worms, 7 Orleans App 214 .)

So that a purchase made subject to trial and approval is not

a mere nudum pactum. but does engender between the parties a binding

obligation (though not a perfect sale) for the breach of which by

either side courts will afford a remedy.   In other words, Article

2460 C.C. is nothing but the announcement in statutory form of the

principle of general law set forth in Section VI of this opinion and

carried into our headnotes as Nos. 4 and 5.  See Dalloz, C.N. Art.

1588; Baudry - Lacantinerie, Vol, 17 Nos. 154, 157, and 164 to 171..

X

Holding these views, we think the judgment of plaintiff's

represe tative (whose competency and honesty there is no reason to doubt) must

prevail; that by the terms of the contract plaintiff cannot be com-

pelled to accept the opinion of others, no matter how competent or how

disinterested they be.

The judgment appealed from is therefore reversed, and it is

now ordered that the plaintiff's demand be rejected at its costs in both